# THE UNITED STATES

*v.*

# WEST.

PLEADING AND PRACTICE; SET-OFF; PRINCIPAL AND SURETIES; BONDS, ACTIONS ON.

1. A plea of set-off when the only plea in an action on a bond against principal and sureties, is the equivalent of a plea of confession and avoidance, and transfers the burden of proof from plaintiffs to defendants. But when so pleaded, and it appears on appeal by plaintiffs that the trial proceeded as though the general issue was pleaded and the plaintiff assumed the burden of proof, the error will not be regarded.

2. If the duties of the principal on a bond are increased or enlarged beyond the limit for which the bond was given, or if the time for their performance has been extended, or if in any other manner the conditions of the bond have been altered, without the knowledge and consent of the sureties, the sureties will not be bound for any default of the principal under the new conditions.

3. And if a bond has been given for the faithful performance of the duty of the principal in one employment, it cannot be extended by construction to cover another employment, although of the same kind, and although the second employment be designated as an extension or continuation of the first.

4. If, in such a case, there is a shortage in the accounts of the principal during his first employment, but he is re-employed before his accounts are settled, the sureties will not be liable for a subsequent shortage, but will be liable for the first, in the absence of proof to show that his employers so dealt with him in connection with the last employment as to preclude themselves from enforcing any right against him or his sureties under his first employment.

No. 516. Submitted January 21, 1896. Decided February 4, 1896.

HEARING on an appeal by the United States from a judgment on a verdict directed by the court for the defendant sureties in an action on a bond against principal and sureties. *Reversed.*

The COURT in its opinion stated the case as follows:

This is a suit at common law upon a bond given to the United States by the appellee, Joseph R. West, as principal, with the appellees, William S. Thompson and William B. Webb, as sureties, to secure to the United States the faithful performance, by West, of the duties of the office of disbursing agent of the Treasury Department, to which he had been appointed, at or about the time of the execution of the bond (December 11, 1891), by the then acting Secretary of the Treasury.

The bond was for the penal sum of three thousand dollars, and the condition of it was as follows:

" Whereas, the Secretary of Treasury has, pursuant to law, constituted and appointed the said Joseph R. West a disbursing agent of the Treasury Department: Now, therefore, if the said Joseph R. West shall well and truly execute and discharge all the duties of the said office of disbursing agent according to the laws of the United States and the regulations of the Treasury Department made in conformity therewith, safely keeping and correctly paying out all sums of public money advanced to him or coming into his hands from time to time  *  *  *  then this obligation to be void and of non-effect; otherwise to remain in full force and virtue."

The order for the appointment of West as disbursing agent, which bears date on December 12, 1891, one day after the date of the bond, is the following terms:

" Under the provisions of section 3614, Revised Statutes of the United States, you are hereby appointed a special disbursing agent of this department, without compensation. Before entering upon the discharge of the duties of said office you will execute a bond, with two or more sureties, in the sum of three thousand dollars ($3,000)."

Notwithstanding the apparent discrepancy in the dates, it is conceded that the appointment specified in this order was the same appointment that is mentioned in the bond,

and that the bond was given in compliance with the requirement of the order.

The section 3614 of the Revised Statutes, under which the appointment was made, provides that, " Whenever it becomes necessary for the head of any department or office to employ special agents, other than the officers of the army or navy, who may be charged with the disbursement of public moneys, such agents shall, before entering upon duty, give bond in such form and with such security as the head of the department or office employing them may approve."

The occasion for the appointment of West, as special disbursing agent under this provision of the statutes, was that, on December 7, 1891, five days previously thereto, he had been appointed by the same acting Secretary of the Treasury a special agent under the provisions of Section 12 of the act of Congress of April 25, 1890 (26 Stat., p. 62), in reference to the World's Columbian ·Exposition, " for duty in connection with the admission of foreign goods," at a specified compensation per day besides his reasonable traveling expenses ; and it was desired that he should be able to receive in advance a sufficient sum of money to pay, himself his stipulated compensation and traveling expenses. He was, therefore, made a special disbursing agent under Section 3614 of the Revised Statutes in order to pay himself as special agent under the act of April 25, 1890. The appointment of special disbursing agent contained in terms no express limitation as to the time for which the agency should last; but the appointment of the special agent under the act of 1890 was expressly limited to terminate on March 8, 1892.

Under his appointement as special disbursing agent, two sums of money, aggregating fifteen hundred dollars, were advanced to West ; and for this amount and his disbursements thereof, some time after the termination of his first employment, that is, some time after March 8, 1892, he presented his accounts to the Treasury Department for ad-

justment.   These accounts showed a balance in his hands of $263.56.   The accounting officer of the Treasury Department, disallowing some small items, stated the amount of the balance due from him to be $276.78.

The account was stated by the First Auditor of the Treasury on April 15, 1892, and on the following day was transmitted by that officer to the Commissioner of Customs, to whom, under section 277 of the Revised Statutes, it was required to be transmitted "*for his decision thereon.*"   The Commissioner of Customs reviewed and approved the statement, as it had been made by the First Auditor, and on April 21, 1892, certified it to the Register of the Treasury, in accordance with the requirements of section 317 of the Revised Statutes.

The duties of West under his appointment of December 7, 1891, seem to have been to advance the interests of the Columbian Exposition in the Republic of Mexico.   Having sufficiently exploited that field of operations, as it would appear, he received, under date of March 16, 1892, an appointment to go to Cuba and Jamaica, in the West Indies, in the interest of the Exposition.   The order for this appointment purported to be merely an extension of the previous order of December 7, 1891, and was in the following terms :

" Your appointment as special agent under date of December 7, 1891, pursuant to the provisions of section 12 of the act of April 25, 1890, relating to the World's Columbian Exposition, is hereby extended to the 30th day of April, 1892.   You will proceed to the Spanish colony of Cuba and to the British colony of Jamaica, for the purpose of distributing information as to the admission into the United States of foreign goods intended for exhibition at the World's Columbian Exposition to be held in Chicago in 1893.

" In all your proceedings you will be guided by the instructions of this Department, specially communicated to you by the Department's letter of December 14, 1891, change of field being taken into consideration."

" On account of changes of climate you will be. allowed one hundred dollars extra in addition to the expenses prescribed by Department regulations."

Thereupon, on the same day (March 16, 1892), he received one thousand dollars from the Treasury for disbursement during this period of extension. And sometime after the termination of that period he rendered his account to the Department, charging himself with the balance of $263.56, which he had admitted in his first account to be due from him, and also with the sum of $1,000 received by him on March 16, 1892, and claiming credit for expenditures amounting to $718.87 (afterwards . corrected to $719.43), thus admitting a balance in his hands of $544.13. The First Auditor, however, charging him with $276.68, instead of $263.56, from his first account, stated the balance due from him to be $557.81. This statement was on October 20, 1892. On the same day it was certified by the First Auditor to the Commissioner of Customs, in whose office a small correction was made, reducing the indebtedness to $557.25. This amount was by the Commissioner certfied to the Register of the Treasury, on November 19, 1892.

West did not pay this balance into the Treasury; and the deficiency remaining unsatisfied the present suit was instituted against him and his sureties on June 28, 1893.

The declaration set forth the bond and its forfeiture, and stated the precise sum of $557.25 as due from West. It was not supported by affidavit of any kind. The defendants united in a single plea, which was a plea of set-off to the amount of $1,998 for services claimed by West to have been rendered by him, and which it is unnecessary to state here, inasmuch as they were not allowed in the court below. The plaintiffs joined issue upon the *pleas* of the defendants, although there was but one plea in the case.

At the trial, counsel for the United States assumed the burden of proof, offered the bond in evidence, and then rested. The defendants introduced proof of the two or-

ders of appointment of December 7, 1891, and March 16, 1892, some testimony as to the receipts and disbursements made by West, and also testimony as to the claim of set-off, part of which claim, however, was withdrawn. There they rested.

The plaintiffs, in rebuttal, proved the order of December 12, 1891, appointing West as a special disbursing agent, and introduced in evidence the accounts from the Treasury Department.

The court thereupon directed the jury to return a verdict in favor of the sureties Thompson and Webb, which was done, the plaintiffs duly excepting. But a verdict was rendered against the principal, West, for the full amount claimed by the United States ($557.25). From the judgment thereon rendered the plaintiffs have appealed to this court.

*Mr. Arthar A. Birney,* United States Attorney for the District of Columbia, and *Mr. C. H. Armes,* Assistant Attorney, for the United States.

*Messrs. Webb, Webb & Lindsley,* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

1. The defendant West has not appealed from the judgment against him, and there seems to have been no ground for him to do so. So far as he is concerned, therefore, the adjudication is complete and must stand. And the appeal by the United States is only as to the defendants Thompson and Webb, the sureties.

2. The pleadings and proofs in the case are not entirely consistent. The only plea is one of set-off, which amounts in this connection to a plea of confession and avoidance, which ordinarily should transfer the burden of proof from the plaintiffs to the defendants. Yet the trial seems to have proceeded as though the general issue also had been pleaded; and we do not think that at this stage of the case

that should be regarded as error—especially inasmuch as on default by the defendants the plaintiffs would have been required to make proof of the actual amount due under the bond.

3. It is claimed on behalf of the appellants, that as the set-off went to the jury as to the principal, it should have been permitted to go to them as to the sureties. But it is not apparent what injury has been suffered by the appellants hereby. The matter of set-off has been decided in their favor; and there is nothing left of it.

4. We understand the substantial ground, on which the court below took the case from the jury as to the sureties, to be, that the testimony showed conclusively that the sureties had been discharged from liability by the action of the Treasury Department in extending the appointment of West beyond the time for which they had contracted, and carrying the balance due from him under his first or original appointment to the credit of his second appointment. And the propriety of that ruling is the question now before us.

The bond in question specifies no time for which it is to be in force; nor does the order of appointment of December 12, 1891, which is the appointment to which it refers, specify either the period of time for which the special disbursing agent was appointed, or the duties which he was to perform as such disbursing agent. But we cannot suppose that the appointment was to be of indefinite duration and without limit as to time, or that the duties were to be of an indefinite character and to include any and all duties of a fiscal character that might be assigned to such special disbursing agent in the future. The fact that he was appointed as a *special* disbursing agent, under a law providing for special disbursing agents, necessarily implies that he had been appointed for a definite and ascertained duty; and as to the precise nature of that duty and the time limited for its duration, we are not left in ignorance. It is conceded that the appointment of Decem-

ber 12, 1891, was in aid of the previous appointment of December 7, 1891, and to enable West, as special disbursing agent, to disburse the money of the United States in his hands as such to himself as special agent.   The proof of his appointment as special agent under the act of 1890, although objected to on other grounds on behalf of the plaintiff, was properly admissible to show the special purpose for which he had been appointed special disbursing agent, and about which the order of December 12, 1891, was silent.

The bond, the order of December 12, and the order of .December 7, are, therefore, all to be considered together as parts of one transaction.   And being considered together, they necessarily imply that the sureties on the bond contracted that West, as special disbursing agent, would faithfully disburse the money of the United States entrusted to him as such, for the use of himself as special agent for the period of about three months, from December 7, 1891, to March 8, 1892.   This was, beyond question, the extent of their legal liability, and the extent to which they intended to contract; and if there had been no extension or continuation of West's appointment as special agent after March 8, 1892, and West had then been called to account for the balance found to be due from him, it cannot admit of serious argument that the sureties would then be bound.   And this position is not controverted by either party.   At all events, we regard the position as beyond controversy.

· From this it' necessarily results that the sureties in this case are liable for the defalcation of their principal on his first account as stated by the accounting officers of the Treasury, unless by the subsequent transaction they have been relieved. from such liability.   And it necessarily follows, also, that the sureties are not liable for the defalcation of West under his second or extended employment, for the reason that they did not contract with reference thereto.   It is well settled law—too well settled to require any citation of authorities in support of it—that, if the duties of the prin-

cipal on a bond are increased or enlarged beyond the limit for which the bond was given, or if the time for their performance has been extended, or if in any other manner the conditions of the bond have been altered, without the knowledge and consent of the sureties, the sureties will not be bound for any default of the principal under the new conditions. And if, as in the present case, the bond was given for the faithful performance of the duty of the principal in one employment, it cannot be extended by construction to cover another employment, although of the same kind, and although the second employment be designated as an extension or continuation of the first.

But the liability of the sureties under the principal's first employment in this case for the sum of $276.68 found to be due from him, with respect to that employment, is not discharged or in any manner affected by his second employment, unless that sum was transferred or in some way credited to him under the second appointment, or the United States, in some way, by the second appointment and their dealings with West in connection with that employment, precluded themselves from enforcing any right against him or against his sureties under his first employment.

The fact that, in his second accounting with the Treasury Department, after the termination of the second employment, the defendant, West, charged himself with the sum of $263.56—the Auditor made it $276.68—as a balance against himself from his first account, does not show that this sum had been transferred to him by the Department for the credit of his second employment. It would rather tend to show the contrary. For if it is to be inferred that there was any such transfer or credit given to him, the amount would have been that which the accounting officers had stated ($276.68), and not what he (West) claimed the balance to be ($263.56). Nor does the fact that the accounting officers of the Treasury bring into their second account a balance due from the first account, show or tend to show that West was authorized to use this balance for the use

and benefit of his second employment. This is only a matter of bookkeeping. The accounting officers, by the form of their accounting, could not have intended to show that there was any such transfer or credit. The amount is not stated as a credit for the second employment, but as a balance due from the first.

Moreover, the plain inference from the record is that no such credit was given. The account of West under his first employment, although stated by the First Auditor of the Treasury under date of April 15, 1892, was not finally stated by the Commissioner of Customs, to whom it was required by law to be sent *for his decision thereon*, until April 21, 1892. West had received his second appointment on March 16, 1892, and on the same day an advance of $1,000 from the Treasury Department on account of this second appointment; and we are to presume that he had gone out of the country, in pursuance of it, and had practically concluded his duties thereunder, before his account under the first appointment was stated, and before there was any balance ascertained that could be transferred to him for the second employment.

Unless, therefore, we are to assume that it was not competent for the United States to give to the defendant, West, a second employment, while his accounts under a previous employment remained unsettled in the Treasury Department, and to advance money to him for the purpose of such second employment, which to all intents and purposes must be regarded as a separate, distinct and independent employment, while there was actually a balance in his hands from the previous employment, yet officially unascertained, without thereby releasing the sureties upon the bond given by him for the faithful performance of his duties under the first employment, we are unable to see any ground upon which the theory of a release can be based; and this ground is too untenable for serious consideration.

We are of opinion that the sureties upon the bond in this case were liable for the default of their principal under his

D. C.]                    Syllabus.

first appointment, but not for any subsequent default by him. And we must, therefore, conclude that it was error in the court below to direct a verdict in their favor with respect to the whole amount claimed.

For that error, *the judgment in favor of the sureties must be reversed, with costs ; and the cause must be remanded to the court below, with direction to award a new trial.*